UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEBRA SASSER, Personal Representative of the Estate of Halbert Eugene Richards | Case No. 1:18-cv-00746 |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS** |
| SAFE HOME SECURITY, INC. | |
| Defendant. | |

Plaintiff, by and through its undersigned counsel, hereby moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order denying Defendant's Motion to Dismiss counts 1 through 6 of the Complaint.

## I. Nature of the Case

Plaintiff brings this action for breach of contract, violation of the North Carolina Unfair and Deceptive Trade Practices Act, fraud, negligence, gross negligence, punitive damages, and unjust enrichment. This matter is brought by the estate of Halbert Eugene Richards ("Richards"). Plaintiff alleges that Defendant and Richards entered into an Agreement, the terms of which Defendant never intended to perform. Defendant failed to provide security equipment and monitoring services as required by the Agreement and wrongfully withdrew funds from Richards' bank account. Plaintiff instituted this action in the General Court of Justice, Superior Court Division, Guilford County, North Carolina. Defendant removed the action to this Court and

1

filed a Motion to Dismiss. This Memorandum of Law is in response to said Motion to Dismiss and the Memorandum of Law in Support of Defendant's Motion to Dismiss.

## II. Statement of Facts

Debra Sasser is the Personal Representative of Richard's Estate. All of the claims in the Complaint arise from conduct occurring prior to the death of Richards and are being prosecuted by Plaintiff on behalf of the Estate of Halbert Eugene Richards. [Doc. No. 2 (Compl.) ¶ 1.] Defendant is a Connecticut corporation that provides home alarm equipment and services. On August 5, 2017, Richards died in Guilford County, North Carolina [*Id*. ¶ 6.]

On or about April 28, 2015, a document entitled "Agreement for Monitoring and Installation of Security Systems" ("Agreement") was prepared by a representative and/or agent of Defendant and signed by Richards at his home. [*Id*. ¶¶ 9-10, 12.] When he signed the Agreement, Richards was 85-years-old and had failing mental health. [*Id*. ¶¶ 15-16.] Pursuant to the terms of the Agreement, Defendant promised to provide security monitoring services and, apparently, monitoring equipment for a period of 60 months in exchange for a monthly payment in the amount of $45.99. [*Id*. ¶ 11.]

At the time of signing the Agreement, Richards possessed security monitoring equipment in his home and had a pre-existing security monitoring agreement for his home with another company. [*Id*. ¶¶ 17-18.]

Defendant never provided Richards with any security monitoring equipment or security monitoring services. [*Id*. ¶¶ 19-20.] For approximately one year after Richards

signed the Agreement, Defendant withdrew money from Richards' bank account in the amount of $45.99 each month for a total of approximately $552.00. [*Id.* ¶¶ 21-22.]

On or about December 22, 2015, Richards named his son, Steven Richards, his attorney-in-fact ("Steven"). [*Id.* ¶ 23.] After becoming aware of the Defendant's wrongful withdrawals from Richards' bank account, Steven attempted, on several occasions, to contact Defendant to tell Defendant that Richards was not receiving security services from Defendant. On each occasion, Defendant's representatives ended the phone calls and continued to withdraw the monthly payments from Richards' bank account. [*Id.* ¶ 24.] Due to Steven's inability to remedy the situation via telephone calls to Defendant, Steven asked the bank to "stop payment" on the withdrawals by Defendant. [*Id.* ¶ 25.] Upon information and belief, after Steven's request to the bank to stop the monthly withdrawals to Defendant, Defendant circumvented the "stop payment" by resubmitting payment requests using a different code. [*Id.* ¶ 26.] Thereafter, Steven closed Richards' bank account. [*Id.* ¶ 27.]

In another to attempt to resolve the situation, Steven submitted an affidavit to Defendant, dated June 16, 2016, wherein he advised that the security system had never been installed and requested that Defendant cease its demands for payment. [*Id.* ¶ 28.] Steven also informed Defendant that Richards would not continue to make payments for a service not being provided. [*Id.*] In response to Steven's affidavit, a representative of Defendant, in correspondence dated June 30, 2016, advised, "I have reviewed your

account and found that your contract with Safe Home Security [Defendant] will not expire until 04/28/20." [*Id.* ¶ 29.]

On August 3, 2016, a representative of Defendant's Collection Department, Ms. Von, advised Richards that his account was past due in the amount of $233.36. Ms. Von further threatened that the account would be reported to "multiple credit bureaus." [*Id.* ¶ 30.] In an invoice Defendant sent Richards, dated November 1, 2016, Defendant sought payment of $419.70. [*Id.* ¶ 31.]

This is the factual predicate for Plaintiff's seven causes of actions, which include (1) fraud; (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); (3) negligence; (4) gross negligence; (5) punitive damages; (6) unjust enrichment; and (7) breach of contract. [*Id.* ¶¶ 33-74.]

### III. <u>Questions Presented</u>

1. Did Plaintiff Plead the Fraud Claim with the Requisite Particularity Required?
2. Did Plaintiff state a Claim under the North Carolina Unfair and Deceptive Trade Practices Act?
3. Can Plaintiff maintain a Claim for Punitive Damages?
4. Can Plaintiff plead Unjust Enrichment in the alternative for a Breach of Contract case?

In this Memorandum, Plaintiff does not address Defendant's contention that the Economic Loss Rule prevents Plaintiff from stating claims for Negligence and Gross Negligence.

**IV.  Argument: Defendant's Motion to Dismiss Should Be Denied**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). *See also Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly* 550 U.S. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

Courts accept the conclusions the plaintiff draws from the facts "only to the extent they are plausible based on the factual allegations." *Burnette*, 687 F.3d at 180. Additionally, under Rule 12(b)(6), documents explicitly incorporated into the complaint by reference, documents attached as exhibits, and documents submitted by a movant that were not attached to or expressly incorporated into a complaint that are integral to the complaint and authentic are considered. *Sullivan v. City of Frederick*, 2018 U.S. App. LEXIS 26648, *2 (2018) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164-66 (4th Cir. 2016). As such, Plaintiff's "Exhibit A" attached to the Complaint must also be considered on this motion to dismiss.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236,

(1974)). "Manifestly, the rule of *Iqbal*/*Twombly* was not intended to serve as a federal court door-closing mechanism for arguably weak cases."[1] *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. Ct. App. 2017). The Court in *Woods* further explained: "Whether BNT will have a difficult time establishing the merits of its claim is of little import now. The question before us is 'not whether [the defendant] will ultimately prevail' . . . but whether [the] complaint was sufficient to cross the federal court's threshold.'" *Id*. at 652-653. *Skinner v. Switzer*, 562 U.S. 521, 529-530 (2011) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

The Defendant contends that, with the exception of the breach of contract claim, all of Plaintiff's claims are barred. Defendant contends that Plaintiff has not stated a claim for Fraud and Unfair and Deceptive Trade Practices causes of action in the Complaint. However, Defendant fails to consider all of the allegations contained in the Complaint, as Defendant overlooks allegations pertaining to conduct occurring after the execution of the Agreement.

As is evident from the recitation of facts herein, Defendant not only breached the Agreement with Richards, but also engaged in multiple instances of fraudulent, unfair, and deceptive conduct.

**1. The Complaint Alleges a Claim for Fraud**

The essential elements of actionable fraud are: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent

---

[1] Plaintiff denies the contention that the instant case is "arguably weak," and makes this point for illustrative purposes only.

to deceive; (4) which does in fact deceive; and (5) resulting in damage to the injured party. *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Rule 9(b) of the Federal Rules of Civil Procedure provides in relevant part that: "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.Civ. P. 9(b). The heightened standard of Rule 9(b) has certain minimum requirements for the pleader. *Topshelf Mgmt. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 725, (M.D.N.C. 2015).To meet this standard, the plaintiff must sufficiently describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

With regard to the first element of Fraud, in the instant case, the terms of the Agreement are the false representation. Under the terms of the Agreement, Defendant was to provide to Richards security monitoring services and equipment. Plaintiff's Complaint alleges that "Defendant did not have any intention of carrying out the terms of the Agreement." [Doc. No. 2 (Compl.) ¶ 34.] This allegation is supported by the following facts, found in the Complaint: (1) Defendant never provided Richards with any security monitoring equipment or security monitoring services [*Id*. ¶¶ 19-20.]; (2) Defendant's representatives ended multiple phone calls with Steven when he attempted to advise Defendant that Richards was not receiving services [*Id*. ¶ 24.]; (3) in response to

Steven's affidavit concerning Richards' lack of services from Defendant, Defendant's representative, in correspondence dated June 30, 2016, advised only of the expiration date of the contract, and made no mention of Steven's allegation that Richards was not receiving service from Defendant [*Id.* ¶¶ 28-29.]; and (4) on August 3, 2016, a representative of Defendant, Ms. Von, advised Richards that his account was past due and would be reported to "multiple credit bureaus." [*Id.* ¶ 30.] The foregoing facts allege the times, places, and contents of the false representations, as well as the identity of the person(s) making said representations, meeting the requirements of Rule 9(b).

As it pertains to the second element of Fraud, the above acts of Defendant were reasonably calculated to deceive Richards into paying monthly payments to Defendant for services and equipment he never received. Defendant never intended to carry out its contractual duties and made it impossible for Richards and/or Steven to terminate the Agreement. As such, the acts were reasonably calculated to deceive Richards into paying for equipment and services he never received.

With regard to the third element of Fraud, Defendant's actions were made with the intent to deceive Richards, as is shown by (1) Defendant's employees repeatedly ending the phone calls with Steven when he attempted to inform Defendant of Richards' lack of service and cancel the contract [*Id.* ¶ 24.]; (2) Defendant's re-coding of payment requests to Richards' bank account to circumvent the "stop payment" on the account [*Id.* ¶ 26.]; (3) Defendant's response to Steven's affidavit [*Id.* ¶ 29.]; and (4) Ms. Von's threat to report Richards' past due account to "multiple credit bureaus." [*Id.* ¶ 30.]

8

As it pertains to the fourth element of Fraud, as the Complaint alleges, Defendant was, in fact, deceived. This is shown by the bank withdrawals each month for one year before Steven became aware of the situation. [*Id.* ¶ 21.]

Finally, with regard to the fifth element of Fraud, as laid out in the Complaint, Defendant's actions resulted in damage to Richards by depleting Richards' assets, thereby causing harm to Richards, to Richards' estate, and to the beneficiaries/heirs of Richards' estate. [*Id.* ¶¶ 42-43.] As a result of the fraudulent acts of Defendant, Defendant obtained monthly payments in the amount of $45.99 for a total of $552.00 for services it never rendered to Richards. [*Id.* ¶¶ 21-22.]

Defendant's Brief alleges that Plaintiff failed to plead Fraud with the requisite particularity. However, Defendant failed to consider the actions by Defendant subsequent to the execution and breach of the Agreement. As such, Defendant's argument for dismissing the Fraud Claim misses the mark due to its failure to address all of the facts alleged in the Complaint. Defendant also claims in its Brief that there is no indication of how Defendant induced Richards to enter the Agreement. Defendant is correct in that the Complaint makes such an allegation; however an indication of how Richards was induced is not an element of Fraud. Therefore, there is no requirement that the Complaint make such indication. Defendant's motion to dismiss Plaintiff's Fraud claim should be denied.

## 2. Plaintiff Sufficiently Stated a Claim for Violation of North Carolina's Unfair and Deceptive Trade Practices Act

The intent of the General Assembly in enacting N.C. Gen. Stat. § 75-1.1 was to enable a person damaged by deceptive acts or practices to recover treble damages from the wrongdoer, to declare deceptive acts or practices in the conduct of any trade or commerce to be unlawful, and to provide civil legal means to maintain ethical standards of dealings between persons in business and the consuming public of North Carolina. *State ex rel. Edmisten v. J.C. Penney Co.*, 30 N.C. App. 368, 227 S.E.2d 141 (1976), *rev'd on other grounds*, 292 N.C. 311, 233 S.E.2d 895 (1977); *Buie v. Daniel Int'l Corp.*, 56 N.C. App. 445, 289 S.E.2d 118, *cert. denied*, 305 N.C. 759, 292 S.E.2d 574 (1982). The more recent pronouncements from the North Carolina Supreme Court concerning the applicability of this section emphasize the consumer protection purpose of the statute. *Bunting v. Perdue Inc.*, 611 F. Supp. 682 (E.D.N.C. 1986).

To establish a prima facie claim for unfair and deceptive trade practices, the Plaintiff must show: (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the Plaintiff. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995). To prevail on an unfair trade practices claim, deliberate acts of deceit or bad faith do not have to be shown, but rather, the plaintiff must demonstrate that the act possessed the tendency or capacity to mislead, or that it created the likelihood of deception. *Boyd v. Drum*, 129 N.C. App. 586, 501 S.E.2d 91 (1998), *aff'd*, 350 N.C. 90, 511 S.E.2d 304 (1999). *See also Edwards v. West*, 128 N.C. App. 570, 495 S.E.2d 920

(1998), *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998); *Peterson v. Bozzano*, 183 Bankr. 735 (Bankr. M.D.N.C. 1995); *Chastain v. Wall*, 78 N.C. App. 350, 337 S.E.2d 150 (1985), *cert. denied*, 316 N.C. 375, 342 S.E.2d 891 (1986).

Once the Plaintiff has presented evidence in support of each of the three elements of unfair and deceptive trade practices, the question whether the Defendant committed the alleged acts is a question of fact for the jury; the court must then determine as a matter of law whether the proven facts constitute an unfair or deceptive trade practice. *First Atl. Mgt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 507 S.E.2d 56 (1998); *Gray v. North Carolina Ins. Underwriting Ass'n*, 132 N.C. App. 63, 510 S.E.2d 396 (1999). A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987). Unfairness is broader than and includes the concept of "deception." *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 279 S.E.2d 1 (1981); *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 362 S.E.2d 578 (1987), *cert. denied*, 321 N.C. 473, 364 S.E.2d 921 (1988). A practice is generally unfair when it offends established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious. *Process Components, Inc. v. Baltimore Aircoil Co.*, 89 N.C. App. 649, 366 S.E.2d 907, *aff'd*, 323 N.C. 620, 374 S.E.2d 116 (1988).

North Carolina courts have also held that "systematically overcharging a customer for two years . . . is an unfair trade practice squarely within the purview" of the North Carolina Unfair and Deceptive Trade Practices Act. *Sampson-Bladen Oil Co. v. Walters*,

86 N.C. App. 173, 177, 356 S.E.2d 805, 808, *cert. denied*, 321 N.C. 121, 361 S.E.2d 597 (1987). In *Sampson-Bladen Oil Co.*, plaintiff created false invoices and charged defendant for oil plaintiff never delivered to defendant. The Court found these actions plainly had the tendency to deceive defendants as to the amount of oil they had received and the amount of money they owed and was a violation of N.C. Gen. Stat. 75-1.1. *Id. See also Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981) (Where the Court found that the mobile home park owners and managers had engaged in unfair and deceptive trade practices when they misrepresented the services they would provide to the residents as lessees of lots in the mobile home park: two playgrounds, one basketball court, one swimming pool, adequate garbage facilities and pickup, complete yard care, paved and lighted streets and common facilities.) In the instant case, the Agreement provides that Defendant would provide security monitoring services to Richards. If a failure to provide the types of services as described in *Marshall* amounts to unfair and deceptive trade practices, then there should be no question that Defendant's conduct in this action is unfair and deceptive.

    The instant case goes much further than merely overcharging a customer. Here, for one year, Defendant charged Richards for services and equipment Defendant never provided. Every month, Defendant withdrew funds from Richards' bank account in payment for services and equipment that did not exist. When Steven attempted to notify Defendant of Richards' lack of services, Defendant's agents refused to speak with him. Even after Steven placed a "stop payment" on Richards' account, Defendant

circumvented the "stop payment" by re-submitting the payment requests using different codes. This continued until Steven was forced to close the bank account. Incredibly, even after the bank account was closed, employees of Defendant harassed Richards and threatened to report him to multiple credit bureaus for his unpaid account. [Doc. No. 2 (Compl.) ¶¶ 9-30.] The conduct described herein is immoral, unethical, oppressive, unscrupulous, and substantially injurious.

Defendant correctly contends in its Brief that a mere breach of contract does not, standing alone, constitute an unfair or deceptive trade practice. However, Defendant once again fails to address all of the allegations. When all of the allegations are considered, as they should be, Defendant's conduct rises to a level of wrongfulness that is far more than a breach of contract and meets the requirement of aggravating circumstances.

Defendant's conduct was in or affecting commerce, as it pertains to a contract for the sale of security monitoring equipment and security monitoring services. Finally, the conduct proximately caused monetary injury to Richards. As such, Plaintiff has alleged facts sufficient to state a claim for violation of N.C. Gen. Stat. § 75-1.1.

To address Defendant's argument in its Brief concerning Plaintiff's alleged need to prove inducement and/or coercion to support this claim, Plaintiff points to the three elements described *supra* that are necessary to prove to support a claim for violation of N.C. Gen. Stat. § 75-1.1. *See Pleasant Valley Promenade*, 120 N.C. App. 650 (1995). As is evident from the case law interpreting said elements, *supra,* there is no requirement to describe or quote any misrepresentations or inducements when alleging a violation of

13

N.C. Gen. Stat. § 75-1.1 where Plaintiff is not relying on an alleged misrepresentation as the basis for its claim. *See Sampson-Bladen Oil Co. v. Walters*, 86 N.C. App. 173, 356 S.E.2d 805, *cert. denied*, 321 N.C. 121, 361 S.E.2d 597 (1987). In the instant case, Plaintiff is contending that Defendant's *actions*, as described in the Complaint, were unfair and/or deceptive (emphasis added) *See* [Doc. No. 2 (Compl.) ¶¶ 9-30.] As such, Defendant's contention that Plaintiff failed to state a claim for violation of N.C. Gen. Stat. § 75-1.1 is misguided.

The above-referenced facts are alleged in the Complaint. *See* [Doc. No. 2 (Compl.) ¶¶ 9-30.] As such, Plaintiff has stated claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act.

### 3. Plaintiff Can Maintain a Claim for Punitive Damages because Plaintiff Alleged a Viable Fraud Claim

Under North Carolina law, a party may recover punitive damages for breach of contract where that Plaintiff can sustain an "independent tort" cause of action. *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1998). The independent tort must be "identifiable," and the tortious conduct must have an aggravating element such as malice or recklessness. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976).

As Defendant admits in its Brief, a Fraud claim constitutes an independent tort sufficient to support a claim for punitive damages. As described above, Plaintiff states a claim for Fraud in the Complaint. Defendant's conduct is malicious and reckless. *See* [Doc. No. 2 (Compl.) ¶¶ 9-30.]

Defendant's failure and/or refusal to provide the bargained-for services and equipment, subsequent refusal to cancel the Agreement, re-coding of payment requests to circumvent the "stop payment" Steven placed on Richards' account, and threats to report Richards to "multiple credit bureaus" collectively illustrate Defendant's malicious intent in its dealings with Richards.

Defendant's conduct was reckless from the beginning, as the failure to provide the security services and equipment put Richards' at risk for bodily harm, and his property at risk for destruction by intruders, fire, or other causes. Defendant's refusal to engage with Steven regarding the lack of service and the refusal to even acknowledge Steven's concerns raised in his affidavit is well beyond reckless. It is reprehensible. Apparently, not once during Richards' or Steven's interactions with Defendant's agents did Defendant attempt to investigate whether Richards was receiving security monitoring services. This is a blatant disregard for Richards' safety and the safety of his home. As such, Defendant's Motion to Dismiss Plaintiff's Claim for Punitive Damages should be denied.

### 4. Plaintiff Can Maintain a Claim for Unjust Enrichment in the Alternative

Plaintiffs may plead unjust enrichment in the alternative while also pleading a breach of contract claim until an express contract has been established by the evidence before the court. *Performance Sales & Mktg., LLC v. Lowe's Cos.*, 2010 U.S. Dist. LEXIS 55426, *13-14 (W.D.N.C. June 4, 2010); *Bandy v. Gibson*, 2017 NCBC LEXIS 66, *11, 2017 NCBC 63 (N.C. Super. Ct. July 26, 2017).

Defendant contends that there is no dispute that a contract exists. However, Defendant has not answered the Complaint and Plaintiff has only alleged the existence of a contract. Therefore, until the existence of an express contract is established, Plaintiff should be permitted to plead unjust enrichment as an alternative means of recovery in this action. As such, Defendant's motion to dismiss Plaintiff's Claim of Unjust Enrichment should be denied.

## V. Conclusion

For the reasons stated herein, Defendant's Motion to Dismiss should be denied.

Respectfully submitted this the 19th day of October 2018.

/s/ Clayton B. Krohn
Clayton B. Krohn
Shope Krohn Attorneys at Law, P.A.
N.C. State Bar No. 25055
Email: clayton@shopelaw.com
426 W. Friendly Ave.
Greensboro, NC 27401
T: (336) 275-1607
F: (336) 275-1684
*Attorney for Plaintiff*

# **CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel and parties of record as follows:

Joseph Hammond
Ellis & Winters LLP
300 N. Greene Street, Ste. 800
Greensboro, NC 27401
Email: joe.hammond@elliswinters.com
T: (336) 217-4193
F: (336) 217-4198

*Attorney for Defendant*

This the 19th day of October, 2018.

/s/ Clayton B. Krohn
Shope Krohn Attorneys at Law, P.A.
N.C. State Bar No. 25055
Email: clayton@shopelaw.com
426 W. Friendly Ave.
Greensboro, NC 27401
T: (336) 275-1607
F: (336) 275-1684
*Attorney for Plaintiff*

17

Case 1:18-cv-00746-NCT-JEP   Document 10   Filed 10/19/18   Page 17 of 18

## **CERTIFICATE OF WORD COUNT**

I certify that the word count feature on the word processing apparatus indicates a total word count in the amount of Three Thousand Nine Hundred Thirty (3,930) words in the foregoing Memorandum of Law in Opposition of Defendant's Motion to Dismiss.

This the 19th day of October, 2018.

/s/ Clayton B. Krohn
Shope Krohn Attorneys at Law, P.A.
N.C. State Bar No. 25055
Email: clayton@shopelaw.com
426 W. Friendly Ave.
Greensboro, NC 27401
T: (336) 275-1607
F: (336) 275-1684
*Attorney for Plaintiff*