# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DEBRA SASSER, Personal Representative of the Estate of Halbert Eugene Richards,<br><br>               Plaintiff,<br>   v.<br><br>SAFE HOME SECURITY, INC.,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)      1:18CV746<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Debra Sasser ("Sasser"), acting as the Personal Representative of the Estate of Halbert Eugene Richards ("Mr. Richards"), filed this action in Guilford County Superior Court against Safe Home Security, Inc. ("Safe Home Security"), alleging violations of North Carolina common law and the North Carolina Unfair and Deceptive Trade Practices Act. (See Compl. [Doc. #2].) Safe Home Security removed the action to this Court based on diversity jurisdiction, (See Pet. for Removal [Doc. #1]), and the matter is now before the Court on Safe Home Security's Motion to Dismiss for Failure to State a Claim [Doc. #7]. For the reasons explained below, Safe Home Security's Motion is GRANTED IN PART as to Sasser's claims for fraud, unfair and deceptive trade practices, negligence, gross negligence, and punitive damages, and DENIED IN PART as to Sasser's unjust enrichment claim.

I.

Sasser alleges that, upon information and belief, on April 28, 2015, Safe Home Security "induced and coerced" Mr. Richards to sign an "Agreement for Monitoring and Installation of Security Systems."[1] (Compl. ¶¶ 9, 13.) In the agreement, Safe Home Security promised to provide security monitoring services and equipment for sixty months in exchange for a payment of $45.99 a month. (Id. ¶ 11.) When the agreement was signed, Mr. Richards was eighty-five years old, in poor mental health, and already had security monitoring equipment. (Id. ¶¶ 15-17.)

For a period of approximately one year after the agreement was signed, Safe Home Security withdrew $45.99 each month from Mr. Richards' bank account but, upon information and belief, never provided Mr. Richards with any security monitoring equipment or services. (Id. ¶¶ 19-21.) The amount allegedly withdrawn totals $552.00. (Id. ¶ 23.)

On December 22, 2015, Mr. Richards's named his son, Steven Richards, his attorney-in-fact. (Id. ¶ 23.) At some point thereafter, Steven Richards became aware of his father's payments to Safe Home Security and attempted to contact Safe Home Security to inform them his father was not receiving security services. (Id. ¶ 24.) Each time Steven Richards tried to contact Safe Home Security, its

---

[1] The facts here are recited in the light most favorable to Sasser, because when considering a Rule 12(b)(6) motion, "we accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." Lucero v. Early, 873 F.3d 466, 469 (4th Cir. 2017).

representatives ended the phone calls and continued to withdraw payment from Mr. Richards' bank account. (Id.)

Sometime after, Steven Richards asked Mr. Richards' bank to "stop payment" to Safe Home Security, but despite this request, Safe Home Security continued withdrawals from Mr. Richards' bank account by "resubmitting payment requests using a different code." (Id. ¶¶ 25-26.) As a result, Steven Richards closed Mr. Richards' bank account. (Id. ¶ 27.)

In an affidavit dated June 16, 2016, Steven Richards informed Safe Home Security "that the security system had never been installed and requested that Defendant cease its demands for payment," and that Mr. Richards would no longer make payments for services that were not provided. (Id. ¶ 28.) In response, representatives of Safe Home Security communicated that the contract would not expire until April 28, 2020. (Id. ¶ 29.)

On August 3, 2016, a representative of Safe Home Security's collection department told Mr. Richards that he owed $233.36 and that his account would be reported to "multiple credit bureaus." (Id. ¶ 30.) In a subsequent invoice sent by Safe Home Security and dated November 1, 2016, Safe Home Security requested payment of $419.70. (Id. ¶ 31.)

On August 5, 2017, Mr. Richards died. (Id. ¶ 6.) The Clerk of Superior Court in Guilford County issued Letters of Administration to Debra Sasser. (Id. ¶ 7.) Sasser then filed this action on behalf of the Estate of Mr. Richards. (See id.)

Sasser alleges seven claims to relief: (1) fraud, (2) unfair and deceptive trade practices, (3) negligence, (4) gross negligence, (5) punitive damages, (6) unjust enrichment, and (7) breach of contract. (See id. at 5-12.)  In response, Safe Home Security argues all of Sasser's claims, except for her breach of contract claim, should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Safe Home Security's Mot. to Dismiss at 1.)  Sasser responded in opposition to the motion, (Mem. of Law in Opp'n of Def.'s Mot. to Dismiss ("Sasser's Opp'n Mem.") [Doc. # 10]), to which Safe Home Security replied, (Reply Mem. in Supp. of Def.'s Mot. to Dismiss ("SHS's Reply Mem.") [Doc. #11]).

II.

Because this case is before the Court on the basis of diversity jurisdiction, this Court must apply the choice of law rules enforced by the courts of the state in which it sits. Volvo Const. Equip. of N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79 (1938) & Klaxon Co. v. Stentor Elec. Mfg. Co, Inc., 313 U.S. 487, 496 (1941)).  Under North Carolina's traditional choice of law rules, the law of the forum state applies to procedural issues, and the law of the site of the claim (lex loci) applies to substantive rights. Boudreau v. Baughman, 368 S.E.2d 849, 853-54 (N.C. 1988).  "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." Id. at 854.  The lex loci rule "requires application of the law of the state where the plaintiff has actually suffered harm."

4

Harco Nat'l Ins. Co. v. Grant Thornton, LLP, 698 S.E.2d 719, 725-26 (N.C. Ct. App. 2010). In other words, "[t]he law of the State where the last act occurred giving rise to defendants' injury governs [the] action." United Va. Bank v. Air-Lift Assocs., Inc., 339 S.E.2d 90, 94 (1986). The same rule governs the choice of law as to punitive damages. See Stetser v. TAP Pharm. Prods., Inc., 598 S.E.2d 570, 580 (N.C. Ct. App. 2004) (explaining that "the substantive law of the state where the injury occurred" applied, not only to determine liability for tort actions, but to determine "what damages were available to plaintiffs for any liability resulting from those claims."). Because North Carolina is the only state alleged where Mr. Richards was plausibly injured, its laws apply to Sasser's claims of fraud, negligence, gross negligence, and punitive damages.

North Carolina law will also be applied to Sasser's unfair and deceptive trade practices claim. While the North Carolina Supreme Court has not addressed the choice of law rules applicable to an unfair and deceptive trade practices claim, the North Carolina Court of Appeals, in cases from the 1980's, has used both the most significant relationship test and the lex loci rule. Compare Andrew Jackson Sales v. Bi-Lo Stores, Inc., 314 S.E.2d 797, 799 (N.C. Ct. App. 1984) (applying the most significant relationship test) with United Va. Bank, 339 S.E.2d at 93-94 (applying the "law of the State where the last act occurred giving rise to . . . injury"); see also P&L Dev., LLC v. Biopharma, Inc., 367 F. Supp. 3d 421, 427 (M.D.N.C. 2019) (citing Stetser, 598 S.E.2d at 580 as "recognizing a split in authority"). In the time since, federal courts, including this Court, have considered

5

the issue and concluded the lex loci rule applies to North Carolina unfair and deceptive trade practices claims. See P&L Dev., LLC, 367 F. Supp. 3d at 428; M-Tek Kiosk, Inc. v. Clayton, No. 1:15CV886, 2016 WL 2997505, at *12 (M.D.N.C. May 23, 2016), appeal dismissed (July 19, 2016); Best v. Time Warner Inc., No. 1:11-CV-104-RLV-DSC, 2013 WL 66265, at *3 (W.D.N.C. Jan. 4, 2013); Martinez v. Nat'l Union Fire Ins. Co., 911 F.Supp.2d 331, 338 (E.D.N.C. 2012); see also SmithKline Beecham Corp. v. Abbott Labs., No. 1:15CV360, 2017 WL 1051123, at *8 (M.D.N.C. Mar. 20, 2017) (applying lex loci test except where "the place of injury is so open to debate that application of the significant relationship test is more appropriate"). Therefore, North Carolina law shall be applied to Sasser's unfair and deceptive trade practices claim because, as above, North Carolina is the only state where Mr. Richards was plausibly alleged to have been injured.

### III.

"In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993) (cert. denied sub nom Am. Home Prod. Corp. v. Mylan Lab., Inc., 510 U.S. 1197 (1994)). A complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (quoting Twombly, 550 U.S. at 557). Furthermore, "labels and conclusion" or "a formulaic recitation of the elements of a cause of action" are insufficient. Id. (quoting Twombly, 550 U.S. at 555). While a court reviewing a motion to dismiss pursuant to Rule 12(b)(6) assumes factual allegations are true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

A.

The first claim for relief brought by Sasser is fraud. (See Compl. at 5.) As both Sasser and Safe Home Security agree, fraud in North Carolina has five elements: "(1) a false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party." Rider v. Hodges, 804 S.E.2d 242, 248 (N.C. Ct. App. 2017) (quoting Forbis v. Neal, 649 S.E.2d 382, 388 (N.C. 2007)). Safe Home Security argues that Sasser has not pled any of these five elements, "let alone with the requisite particularity," (Mem. of Law in Supp. of D.'s Mot. to Dismiss ("SHS's Mem.") [Doc. #8] at 7), and further argues that Sasser must plead, but has not pled, that "at the time the agreement was

7

made, the defendant intended not to perform the agreement." (SHS's Reply Mem. at 3-6.)

Although Sasser's fraud claim arises under North Carolina law, Rule 9(b)'s heightened pleading claims apply because the claim is being litigated in federal court.[2] U.S. ex rel. Palmieri v. Alpharma, Inc., 928 F. Supp. 2d 840, 853 (D. Md. 2013). Federal Rule of Civil Procedure Rule 9(B) states, in pertinent part "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In the present case, Sasser alleged that on April 28, 2015, a representative of Safe Home Security visited Mr. Richards, a man of then eighty-five years of age who already had a home security system. Acting, it is alleged, with the intent to deceive, the salesman made, "upon information and belief", representations he knew at the time to be false regarding Safe Home Security's providing security system monitoring services in return for monthly withdrawals from Mr. Richards' bank account. Further, "upon information and belief", those services—as the salesman knew when making his pitch—were never to be performed; yet, Safe Home Security made monthly withdrawals, even after being advised that no services were being received. When payments were finally withheld, Safe Home Security threatened to report Mr. Richards to various credit bureaus.

---

[2] Neither Sasser nor Safe Home Security dispute that Rule 9(b) of the Federal Rules of Civil Procedure applies. (See Sasser's Opp'n Mem. & SHS's Reply Mem.)

While the complaint complies with Rule 9(b)'s plain word requirement of stating circumstances constituting the claimed fraud (the who, the where, the how, and the what), it falls short of meeting the plausibility requirement of Iqbal and Twombly. Assertions "upon information and belief" that services were never provided or intended to be provided, along with a general assertion of intent to deceive, do not alone or in combination create a reasonable inference of intentional misrepresentation. Therefore, Sasser's fraud claim is dismissed.

B.

The second claim for relief brought by Sasser is unfair and deceptive trade practices as codified in North Carolina General Statute § 75-1.1, North Carolina's Unfair and Deceptive Trade Practices Act. (See Compl. at 6.) Safe Home Security argues that Sasser has only alleged a breach of contract, and "mere breach of contract, standing alone, does not constitute an unfair or deceptive trade practice." (SHS' Mem. at 8.) Instead, Safe Home Security argues that Sasser must show "substantial aggravating circumstances accompanying the breach of contract," which Sasser has not done. (Id. at 8-9.) Furthermore, Safe Home Security argues that because Sasser's claim is based on deceptive conduct, she must plead such allegations with particularity, but has not done so. (Id. at 10.)

Sasser acknowledges that the breach of contract claim on its own does not constitute an unfair or deceptive trade practice but argues that "when all of the allegations are considered, as they should be, Defendant's conduct rises to a level of wrongfulness that is far more than a breach of contract and meets the

requirement of aggravating circumstances." (Sasser's Opp'n Mem. at 13.) Furthermore, Sasser argues that she need not plead the claim with particularity because she is "contending Defendant's *actions*, as described in the Complaint, were unfair and/or deceptive . . . ." (Id. at 14.)

To state a claim for unfair and deceptive trade practices, Sasser must allege three elements: "(1) the defendant committed an unfair or deceptive act or practice, (2) that was in or affecting commerce and (3) proximately caused injury." BioSignia, Inc. v. Life Line Screening of Am., Ltd., No. 1:12CV1129, 2014 WL 2968139, at *6 (M.D.N.C. July 1, 2014) (citing Dalton v. Camp, 548 S.E. 2d 704, 711 (N.C. 2011)), adopted by unpublished order (Aug. 4, 2014).  As Safe Home Security noted, and Sasser agreed, "a mere breach of contract claim is not unfair or deceptive absent substantial aggravating circumstances." Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012) (applying North Carolina law) (internal quotations and ellipses omitted).  "Therefore, regardless of how unscrupulous the conduct may appear, efforts to encourage contractual performance while planning to breach, a refusal to otherwise meet contractual obligations, or an intentional breach of contract are not aggravating circumstances." Beam Constr. Co., Inc. v. Allied World Specialty Ins., Inc., No. 3:27-CV-0040-FDW-DSC, 2017 WL 5158712, at *4 (W.D.N.C. Nov. 7, 2017) (internal quotations and punctuation omitted) (citing Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989), Deltacom, Inc. v. Budget Telecom, Inc., No. 5:10-cv-38-FL, 2011 WL 2036676, at *4 (E.D.N.C. May 22, 2011), &

10

Mitchell v. Linville, 557 S.E. 2d 620, 623 (N.C. Ct. App. 2001)); see also Ellis, 699 F.3d at 787 (noting that even an intentional breach of contract "is not sufficiently unfair or deceptive to sustain [an unfair and deceptive trade practices] claim.") (internal quotations omitted) (citing Wachovia Bank & Trust Co. v. Carrington Dev. Assocs., 459 S.E. 2d 17, 21 (N.C. Ct. App. 1995)). The type of conduct that North Carolina courts have determined constitutes a substantial aggravating factor "has involved forged documents, lies, and fraudulent inducements." BioSignia, 2014 WL 2968139, at *6 (citing North Carolina Court of Appeals cases).

Here, Sasser encounters the same plausibility problem as that present in her fraud claim. Assertions "upon information and belief" that Safe Home Security circumvented Steven Richards' stop payment order combined with allegations that a representative of Safe Home Security threatened to report the account to credit bureaus, do not alone or in combination create a reasonable inference of unfair and deceptive trade practices. Therefore, Sasser has not sufficiently alleged a claim for unfair and deceptive trade practices and thus the claim is dismissed.

C.

The third and fourth claims Sasser brings are claims for negligence and gross negligence. (See Compl. at 8-10.) Safe Home Security argues that North Carolina's economic loss rule bars these claims. (SHS's Mem. at 4-6.) In responding to the memorandum, Sasser states, "Plaintiff does not address Defendant's contention that the Economic Loss Rule prevents Plaintiff from stating

11

claims for Negligence and Gross Negligence." (Sasser's Opp'n Mem. at 4.) Safe Home Security argues that this statement constitutes an abandonment of these claims, and therefore, they must be dismissed. (SHS's Reply Mem. at 2.)

Courts in both this District, and throughout the Fourth Circuit, agree that failing to respond to an argument constitutes an abandonment of a claim. See, e.g., O.V. v. Durham Pub. Schs. Bd. of Educ., No. 1:17CV691, 2018 WL 2725467, at *22 (M.D.N.C. Jun. 6, 2018) ("Plaintiffs included no arguments against dismissal of their NCSES claims in their opposition memorandum. . . . Under the circumstances, the Court should deem Plaintiffs' NCSES claims abandoned and dismiss them accordingly."), adopted by O.V. v. Durham Pub. Schs. Bd. of Educ., 1:17CV691, 2018 WL 3370644 (M.D.N.C. July 10, 2018); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to this argument, the plaintiff abandons any discriminatory discharge claim."); Hall v. Tyco Hall Int'l Ltd., 223 F.R.D. 219, 255 (M.D.N.C. 2004) ("In his Response Brief, Plaintiff does not dispute Tyco Electronics' contentions. Therefore, the Court deems Plaintiff to have abandoned these claims."); Mentch v. E. Sav. Bank, FSB, 949 F. Supp. 1236, 1247 (D. Md. 1997) ("I agree with ESB that Mentch has abandoned her harassment claim by failing to address that claim in her opposition to ESB's motion for summary judgment, or to offer clarification in response to ESB's reply brief.") Therefore, it is determined that Sasser has abandoned her negligence and gross negligence claims

by failing to respond to Safe Home Security's arguments, and they must be dismissed.

However, even if these claims were not abandoned, they would still be dismissed because of North Carolina's economic loss rule. "North Carolina's economic loss doctrine provides that a breach of contract does not ordinarily give rise to a tort action by the promise against the promisor." Severn Peanut Co., Inc. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (internal quotations omitted) (quoting Ellis v. La.-Pac. Corp., 699 F.3d 778, 783 (4th Cir. 2012)). The Fourth Circuit consistently rejects "attempts by [plaintiffs] to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim as inconsistent both with North Carolina law and sound commercial practice." Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (internal quotations and punctuation omitted) (quoting Broussard v. Meineke Dis. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998)). In this case, there are no allegations to support a separate theory of liability under tort law. (See Compl.) Instead, the injury arises from Safe Home Security's alleged failure to comply with the terms of the contract, despite the fact Mr. Richards paid the fees as required. (See id.) Therefore, the economic loss doctrine requires that Sasser's negligence and gross negligence claims be dismissed.

D.

Sasser's fifth claim for relief is punitive damages. (Compl. at 10.) As both Sasser (Sasser's Opp'n Mem. at 14-15), and Safe Home Security, (SHS's Mem. at

13

12-13) acknowledge, Sasser's claim for punitive damages relies on the viability of her fraud claim. Because Sasser's fraud claim is dismissed, (see supra at 9), her punitive damages claim must also be dismissed.

E.

Sasser's sixth and final claim for relief is unjust enrichment. (Comp. at 11). Safe Home Security argues that Sasser's unjust enrichment claim should be dismissed because, "[w]here, as here, there is no dispute regarding the existence of an express contract, plaintiff cannot maintain causes of action for both breach of contract and unjust enrichment." (SHS's Mem. at 11). Sasser responds that she "may plead unjust enrichment in the alternative while also pleading a breach of contract claim until an express contract has been established by the evidence before the court," and notes that Safe Home Security has not answered the complaint, and therefore the existence of a contract remains only an allegation at this phase. (Sasser's Opp'n Mem. at 15-16.)

Safe Home Security correctly points out that a party cannot "simultaneously collect damages on a breach of contract claim and an unjust enrichment claim." (SHS's Mem. 11.) However, at this early stage of litigation, Sasser is permitted to allege an unjust enrichment claim, which she has done sufficiently, as an alternative to her breach of contract claim, because the existence of a contract has not yet been proven. See Mode v. S-L Dist. Co., LLC, No. 3:18-cv-00150-RJC-DSC, 2019 WL 1057045, at *7, *8 (W.D.N.C. Mar. 6, 2019) (noting that dismissal of an unjust enrichment claim is improper when the existence of an

14

enforceable, express contract has not been proven by evidence before the court and providing the elements of an unjust enrichment claim.)  Therefore, her claim for unjust enrichment is not dismissed.

IV.

For the reasons stated above, IT IS HEREBY ORDERED that Defendant Safe Home Security, Inc.'s Motion to Dismiss [Doc. # 7] be GRANTED IN PART as to Plaintiff Debra Sasser's claims for fraud, unfair and deceptive trade practices, negligence, gross negligence, and punitive damages, and DENIED IN PART as to the unjust enrichment claim.

This the 15th day of August, 2019.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
